## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | **Case No. 23-cv-2094** |
| *Plaintiff,* | |
| v. | **COMPLAINT – CLASS ACTION** |
| CENTER FOR VEIN RESTORATION (MD), LLC, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

Plaintiff Jane Doe ("Plaintiff"), individually and on behalf of a class of all others similarly situated (the "Class"), brings this Class Action Complaint and alleges the following against defendant Center for Vein Restoration (MD), LLC ("CVR" or "Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

### Introduction

1.      CVR operates a website for its various medical facilities through which its patients may, among other things, learn about vein disease and its treatments, schedule appointments, and assess their own conditions and potential treatments via an online questionnaire. Patients communicate their medical information via the site, including private and confidential information regarding their medical conditions and treatment.

2.      Unbeknownst to its patients, while using these online services, CVR surreptitiously shares their private health information ("PHI") and individually identifiable health information ("IIHI") with Google Analytics, a service that enables website owners to track patients' actions during their site visits in order to target those patients with personalized advertisements. That PHI and IIHI includes but is not limited to:

a. Medical conditions and symptoms related to patients' vein disease;

b. Family medical histories related to vein disease; and

c. Information regarding patients' use of the website to make telephone calls to schedule appointments through the site.

3.      Both Pennsylvania and federal law protect the confidentiality of a patient's private health records and communications, and strictly limit the disclosure of such information without consent. 18 Pa. Cons. Stat. Ann. § 5701 *et seq.*, Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"); Health Information Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191 (1996). Regulations promulgated under HIPAA define IIHI as health information that can be linked to a specific person and PHI as IIHI that is transmitted by or maintained in electronic media as well as any other form or medium. *See* 45 CFR 46.160.103.

4.      Google Analytics enabled CVR to simultaneously share with Google the contents of patient communications exchanged with CVR, thereby disclosing its website visitors' PHI and IIHI.

5.      CVR did not obtain patients' consent to share their PHI and IIHI and in fact does not disclose to its patients that it shared this information with Google or even enable Google to track patients' website activity.

6.      Google received and stored the contents of patients' website communications with CVR as they occurred in real time, possibly before the full response from CVR even appeared on the visitors' computing devices.

7.      This contemporaneous sharing of patients' PHI and IIHI violated Plaintiff's and Class Members' rights as patients and their reasonable expectations of privacy. It also breached the express and implied promises CVR made to patients.

8.      CVR's surreptitious sharing of this information with Google violated WESCA, 18 Pa. Cons. Stat. Ann. § 5701 *et seq.*, as well as Plaintiff's and Class Members' right to privacy.

9.      Plaintiff Jane Doe seeks statutory damages on her own behalf and that of a class of similarly situated Pennsylvania residents to remedy CVR's violations of law.

### Parties

10.      Plaintiff Jane Doe resides in Shermans Dale, Pennsylvania, and used the CVR website during the relevant period.[1]

11.      CVR is a Maryland limited liability corporation with its principal place of business in Greenbelt, Maryland. CVR maintains branch operations in this District in Bensalem, Horsham, King of Prussia, and Wayne.

### Jurisdiction and Venue

12.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists as CVR is a citizen of a state different from that of at least one Class Member.

---

[1] Plaintiff seeks to proceed anonymously, as have plaintiffs in other litigation claiming privacy violations involving PHI. *See, e.g., Doe v. Meta Platforms Inc.*, No. 22-cv-04680, ECF 1 (N.D. Cal. Aug. 15, 2022); *Doe. v. Meta Platforms Inc.,* No. 22-cv-3580, ECF 1 (N.D. Cal. June 17, 2022). Plaintiff will seek CVR's consent to proceed anonymously.

13.    This Court has personal jurisdiction over CVR because it does business in this District and employs individuals who work in the Commonwealth of Pennsylvania. CVR also committed statutory violations within this state that harmed Plaintiff, and is engaged in substantial and continuous and not isolated activity within this state.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because CVR is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and because its contacts with this District are sufficient to subject it to personal jurisdiction.

**Factual Allegations**

15.    CVR was established in 2007. It now claims to operate over 100 clinics in 22 states and serve 300,000 patients annually.[2]

16.    At all relevant times, when patients used the CVR website as described above (*see supra* ¶ 2), the website disclosed their IIHI and their PHI to Google.

17.    CVR sent this patient information to Google using a tool called "Google Analytics," which allows website owners to track visitors' actions in order to target them with personalized advertisements. Google Analytics collects the IP addresses of website visitors in order to facilitate and track internet communications. Simply put, Google can use the information that CVR is disclosing in order to identify a specific patient's actions on CVR's website.

18.    Google Analytics offers website owners an opt-in IP anonymization feature. According to Google, this feature is designed to help site owners comply with their own privacy

---

[2] *See* https://www.centerforvein.com/our-clinics/staff/sanjiv-lakhanpal (last accessed May 25, 2023).

policies and the recommendations of data protection authorities. As Google puts it, the anonymization "takes place as soon as data is received by Google Analytics, before any storage or processing takes place."[3]

19.    If the IP anonymization feature is enabled by the website owner, an additional parameter is added to the communication between website visitors' computers and the Google Analytics server, and defined as "aip=1" (see below).



20.    When the "aip" parameter does not appear, the IP address is not anonymized, thus enabling Google to identify website visitors' IP addresses and online actions.

_____

[3] *See* https://support.google.com/analytics/answer/2763052 (last accessed May 25, 2023).

21.     CVR does not enable the IP anonymization feature on its website. That is reflected in the screenshot below from CVR's website, which does not include the parameter in the place where it appears in the screenshot above.



22.     By using the Google Analytics tool without the anonymized IP feature, CVR is sharing its patients' online activity with Google, along with their IP addresses, even when patients have not themselves shared (or consented to share) such information.

23.     Upon entering CVR's website for the first time, many patients choose to take the self-assessment offered on the website's home page (see bottom right corner below).



24.     From there, they are directed to a questionnaire, where they answer several questions, some of which solicit private and personal information (see below).



25.    After patients submit their answers to the questionnaire, that information is automatically sent directly to Google. The image below reflects the transmittal of the following: the patient suffers from spider veins, and has not been treated for them; she has a relative who has been treated for vein disease, varicose veins, or spider veins; she experienced burning or itchy legs, and restless legs; she stands or sits for long periods of time; and she submitted a form to schedule a consultation.



26.    That information, combined with the patient's IP address (which identifies a specific device connected to the internet and its location) allows Google to identify the person who submitted the information to CVR.

27.    CVR also offers patients the option of calling to schedule an appointment via the website. When patients click the "Call Us" pictured below, those clicks are shared with Google. And when patients use the search function (accessed via the magnifying glass pictured below), their searches are also shared with Google.



**CVR Shared Plaintiff's and Class Members' PHI and IIHI
with Google Without Disclosure or Consent**

28.    All the Google functionality on CVR's website results in its disclosing to Google patients' private and personal information, as well as their IP addresses, all without its patients' knowledge or consent.

29.    Upon information and belief Google compensated CVR for the disclosures of Plaintiff's and Class Members' PHI and IIHI in the form of enhanced marketing and advertising capabilities. Google instructs potential Analytics customers that they "need to add a small piece of JavaScript measurement code to each page on [their] site[s]. Every time a user visits a webpage, the tracking code will collect pseudonymous information about how that user interacted with the page. … Once Analytics processes the data, it's stored in a database where it can't be changed."[4]

30.    Google Analytics offers users the option of linking the service to their Google Ads accounts "to see the full customer cycle, from how users interact with your marketing (e.g., clicking ads) to how they finally complete the goals you've set for them on your site or app (e.g., making purchases, consuming content)."[5]

31.    All Google Analytics customers, including those without Google Ads accounts, have access to Google Analytics Reports, which they "can use … to monitor traffic, investigate

---

[4] How Google Analytics works (available at
https://support.google.com/analytics/answer/12159447) (last accessed May 30, 2023).
[5] Link Google Ads and Analytics (available at
https://support.google.com/analytics/answer/9379420) (last accessed May 30, 2023).

data, and understand [their] users and their activity.[6] Those customers thereby profit from their

sharing of Plaintiff's and Class Members' PHI and IIHI.

### Jane Doe

32.    Ms. Doe has been a CVR patient at all times relevant to this action.

33.    Ms. Doe used the CVR website to take the self-assessment, and disclosed PHI and

IIHI in the course of completing the self-assessment.

34.    Ms. Doe had no idea that CVR was sharing her PHI and IIHI with Google until

discovering as much shortly before filing this lawsuit.

35.    Ms. Doe's PHI and IIHI and her medical website history are private and

confidential information which no third party has a right to access without her consent.

36.    Upon information and belief Google compensated CVR for the disclosures of Ms.

Doe's PHI and IIHI (and that of Class Members) in the form of enhanced marketing and/or

advertising services.

37.    CVR profited from sharing Ms. Doe's information.

38.    CVR violated Ms. Doe's right to privacy in her personally identifiable, sensitive,

confidential medical communications.

### CVR's Sharing PHI and IIHI with Google Breaches
### CVR's Privacy Policy and Notice of Privacy Practices

39.    Patients' activities on CVR's website are private communications between

patients and CVR. By embedding Google Analytics source code into its website, CVR was

disclosing to Google the contents of those communications.

---

[6] Understanding Google Analytics Reports (available at
https://support.google.com/analytics/answer/9212670) (last accessed May 30, 2023).

40.     CVR's Privacy Policy and Notice of Policy Practices reflects that "CVR is permitted to use or disclose PHI to other parties," and lists "categories describing these uses and disclosures." Although the Notice of Privacy Practices includes an extensive list of the ways in which CVR may use and disclose its patients' PHI, it makes no mention that it uses anything akin to Google Analytics to track and automatically transmit communications to Google.[7]

41.     CVR's Notice of Privacy Practices also states that "CVR is required by law to maintain the privacy of your PHI."[8]

42.     The web pages that are visible to patients and patients' interactions with CVR's website are communications between CVR and its patients.

43.     CVR allowed Google to intercept those communications by embedding Google Analytics on its website.

**Applicable Law**

44.     WESCA, 18 Pa. Cons. Stat. § 5701, *et. seq.* prohibits the intentional (1) interception or procurement of any other person to intercept "any wire, electronic or oral communication;" (2) disclosure to any other person of the contents of "any wire, electronic or oral communication, or evidence derived therefrom," knowing or having reason to know that the information was obtained through such interception; and (3) using the contents of "any wire, electronic or oral communication, or evidence derived therefrom," knowing or having reason to know the information was obtained through such interception. 18 Pa. Cons. Stat. § 5703.

---

[7] *See* Privacy Policy – Notice of Privacy Practices (available at https://www.centerforvein.com/privacy-policy) (last visited May 30, 2023)

[8] *Id.*

45.    WESCA authorizes civil actions for damages against "any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use" a "wire, electronic, or oral communication" in violation of WESCA. 18 Pa. Cons. Stat. § 5725(a).

46.    WESCA defines "intercept" as any "acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. § 5702. "Contents" as "used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication." *Id.*

47.    WESCA defines "person" as "any individual, partnership, association, joint stock company, trust or corporation." *Id.* CVR is a corporation, and thus a "person" as defined by WESCA.

48.    WESCA defines "electronic communication" as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." *Id.*

49.    Plaintiff's and Class Members' text entries, keystrokes, clicks, scrolling and swiping finger movements, and other interactions with CVR's website are "contents" of "electronic communications" as defined by WESCA.

50.    Prevailing plaintiffs in a WESCA action are entitled to an award of (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and costs. 18 Pa. Cons. Stat. § 5725(a).

51.    HIPAA prohibits the disclosure of IIHI. HIPAA's privacy rule defines IIHI as information collected from an individual, and:

    a.  Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

    b.  Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and

       i.  that identifies the individual; or

      ii.  with respect to which there is a reasonable basis to believe the information can be used to identify the individual. 45 C.F.R. § 160.103.

52.     HIPAA defines PHI as information that is transmitted or maintained in electronic, written, or oral form. *Id.*

53.     On December 1, 2022, the Office for Civil Rights of the U.S. Department of Health and Human Services issued a bulletin to highlight the obligations of HIPAA-covered entities using "online tracking technologies," as CVR did.

54.     These technologies include pixels, fingerprinting scripts, cookies and web beacons, code that tracks and profiles users' online activities and discloses the collected user data to technology vendors for marketing purposes without HIPAA-compliant authorization.

55.     The HHS Bulletin states: "Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of protected health information (PHI) to tracking technology vendors or any other violations of the HIPAA Rules."

56.     As a medical provider for Plaintiff and Class Members, CVR owed its patients a fiduciary duty of confidentiality in providing health care and in maintaining patients' health information.

57.     All health care providers owe their patients a duty not to disclose patients' medical information without the patient's informed consent.

**Class Action Allegations**

58.     Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a class of all Pennsylvania residents who:

    a.  were CVR patients at any time after CVR initially installed Google Analytics or its predecessor products on its website; and

    b.  completed the self-assessment test on CVR's website.

59.     Excluded from the Class are CVR, any entity in which CVR has a controlling interest, and CVR's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

60.     Based on the volume of patient use of CVR's medical website, the prospective Class includes tens of thousands of individuals, making joinder of all members impracticable. The exact size of the proposed Class and the identities of the Class Members are readily ascertainable from CVR's business records.

61.     There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. Common issues regarding the Class include among others whether:

    a.  CVR's use of Google Analytics was without patient consent or authorization;

    b.  CVR obtained and shared or caused to be obtained and shared Plaintiff's and Class Members' PHI and/or IIHI through tracking using Google Analytics;

    c.  CVR's practices relating to disclosures of Plaintiff's and Class Members' communications with CVR to Google including PHI and/or IIHI were intentional;

    d.  CVR profited from its disclosures to Google;

e.  CVR's practices relating to disclosures of Plaintiff's and Class Members' communications with CVR to Google including PHI and/or IIHI violate WESCA;

f.  CVR's practices constituted an invasion of privacy and breach of fiduciary duty; and

g.  CVR's conduct harmed and continues to harm Plaintiff and Class Members, and, if so, the extent of injury.

62.    Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

63.    There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of CVR's records, and the issues of liability are determinable entirely from the face of the operative documents.

64.    Plaintiff's claims are typical of those of the class she seeks to represent, and she will fairly and adequately protect and represent the interests of the Class. There is no conflict between Plaintiff and the proposed Class.

65.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual Class Members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for Class Members to seek redress individually. In addition, it is likely that most Class Members are unaware that they have claims. Finally, the prosecution of separate actions by the individual Class Members, even if possible, would create a risk of inconsistent or varying adjudications regarding the individual Class Members against CVR.

66.    Plaintiff is represented by counsel who are competent and experienced in both consumer protection and class action litigation.

**Tolling of Statutes of Limitation**

67.     All applicable statutes of limitation have been tolled by CVR's knowing and active concealment of the facts alleged in this Complaint.

68.     Plaintiff and Class Members could not have reasonably discovered CVR's practice of sharing their PHI and/or IIHI with Google until shortly before this class action was filed.

69.     CVR was and remains under a continuing duty to disclose to Plaintiff and Class Members its practice of sharing PHI and/or IIHI with Google.

70.     As a result of CVR's active concealment, all applicable statutes of limitation have been tolled.

**Claims for Relief**

**Count I**
**Violation of WESCA, 18 Pa. Cons. Stat. Ann. § 5701 *et seq.***

71.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

72.     CVR is a "person" as defined by WESCA.

73.     All communications between Plaintiff or Class Members and CVR qualify as "electronic communications" under WESCA because each such communication was a "transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system."

74.     CVR engaged in an "interception" by allowing Google to secretly record the contents of Plaintiff's and Class Members' electronic communications.

75.     CVR aided in the interception of "contents" as defined by WESCA in that the data from the communications exchanged between Plaintiff and CVR that were redirected to and

recorded by Google include information which identifies the parties to each communication, their existence, and the exact contents of such communications.

76.    CVR aided in the interception of "contents" in at least the following forms:

    a.    The parties to the communications;

    b.    The precise text of patient search queries;

    c.    The precise text of patient communications about specific medical conditions;

    d.    The precise text of patient communications about specific treatments;

    e.    The precise text of specific buttons that patients clicked;

    f.    The precise dates and times when patients used the CVR website;

    g.    Information that was a general summary or informed Google of the general subject of communications that CVR sent back to patients in response to search queries and requests for information; and

    h.    Any other content CVR aided Google in collecting from the internet.

77.    Plaintiff and Class Members did not consent to having their communications intercepted by CVR or Google and were not even aware that this was occurring. In fact, Plaintiff and Class Members reasonably expected under the circumstances that their electronic communications would not be intercepted.

78.    At all relevant times, CVR's conduct was knowing and intentional.

79.    Pursuant to 18 Pa. Cons. Stat. § 5725(a), Plaintiff and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of WESCA and are each entitled to: (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

**Count II**
**Invasion of Privacy – Intrusion Upon Seclusion**

80.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

81.    Pennsylvania law recognizes that patients have a right to privacy with respect to their medical records. *See, e.g.*, 28 Pa. Code § 115.27; 49 Pa. Code § 16.61.

82.    Despite its duty to maintain the confidentiality of Plaintiff's and Class Members' PHI and IIHI, CVR disclosed that information without Plaintiff's and Class Members' knowledge, consent, or authorization.

83.    The information CVR disclosed was substantial and included Plaintiff's and Class Members' status as CVR patients, and the contents of communications exchanged between Plaintiff or Class Members and CVR, including but not limited to information regarding treating physicians, potential physicians, conditions, treatments, appointments, search terms, and bill payment.

84.    CVR's intentional disclosure of patients' PHI and IIHI to Google without their consent would be highly offensive to a reasonable person. Plaintiff and Class Members reasonably expected that their PHI and IIHI would not be disseminated to outsiders strictly for commercial purposes.

85.    CVR's disclosure of Plaintiff's and Class Members' PHI and IIHI was highly offensive to a reasonable person at least because such disclosures violated expectations of privacy that have been established by the Pennsylvania Constitution, the Pennsylvania Patient's Bill of Rights (55 Pa. Code § 5100.53) and established social norms. Privacy polls and studies show that Americans believe that one of the most important privacy rights is the need for an individual's affirmative consent before their personal data is collected, shared, or used.

18

86.     Plaintiff and Class Members had a legitimate and reasonable expectation of privacy with respect to their PHI and IIHI, and were entitled to anticipate that CVR would maintain its confidentiality rather than disclose it by unreasonable means.

87.     CVR owed a duty to Plaintiff and Class Members to maintain the confidentiality of their PHI and IIHI, rather than share that information with Google for marketing purposes without Plaintiff's and Class Members' express written consent.

88.     CVR obtained Plaintiff's and Class Members' PHI and IIHI by falsely promising that it would safeguard the confidentiality of that information and that it would never disclose such information to third parties for marketing purposes without written consent. The deceitful method through which CVR obtained Plaintiff's and Class Members' PHI and IIHI would be objectionable to a reasonable person.

89.     CVR's conduct damaged Plaintiff and Class Members in at least the following ways:

      a.     Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

      b.     CVR undermined the confidential nature of the physician-patient and health care provider-patient relationships;

      c.     CVR took something of value from Plaintiff and Class Members, and derived benefit therefrom without Plaintiff's and Class Members' knowledge or consent, and without sharing the benefit of such value;

      d.     Plaintiff and Class Members did not receive the full value of the medical services for which they paid, which included CVR's duty to maintain the confidentiality of their PHI and IIHI; and

      e.     CVR's actions diminished the value of Plaintiff and Class Members' PII and IIHI.

90.     Plaintiff and Class Members have been damaged as a direct and proximate result of CVR's invasion of their privacy and are entitled to seek just compensation, including monetary damages.

91.     Plaintiff and Class Members seek appropriate relief for their injuries, including but not limited to damages that will compensate Plaintiff and Class Members for the harm to their privacy interests.

92.     Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of CVR's actions, which caused injury to Plaintiff and Class Members in conscious disregard of their rights. The award of such damages is necessary to deter CVR from engaging in such conduct in the future.

**Count III**
**Breach of Fiduciary Duty**

93.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

94.     Plaintiff and Class Members have both equitable and legal interests in the PHI and IIHI that CVR shared with Google. As a healthcare provider, CVR owed fiduciary duties to Plaintiff and Class Members, including a duty to safeguard and not improperly disclose that information.

95.     Plaintiff and Class Members were entitled to expect that information they shared with CVR would remain confidential. Plaintiff and Class Members did not consent to or authorize CVR's disclosure of their PHI and IIHI to outsiders.

96.     CVR breached its fiduciary duty of confidentiality by disclosing Plaintiff's and Class Members' PHI and IIHI, including the content of their communications with CVR.

97.     CVR's breach of fiduciary duty injured Plaintiff and Class Members in at least the following ways:

    a.    Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

    b.    CVR undermined the confidential nature of the provider-patient relationship;

    c.    CVR took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

    d.    Plaintiff and Class Members did not get the full value of the medical services for which they paid, which included CVR's duty to maintain confidentiality; and

    e.    CVR's actions diminished the value of Plaintiff's and Class Members' PHI and IIHI.

98.     As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

    a.    an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

    b.    equitable relief permanently enjoining CVR from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PHI and IIHI;

    c.    an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

    d.    an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

    e.    pre-judgment and post-judgment interest on all amounts awarded;

    f.    declaring CVR's business practices alleged in this Complaint to be unlawful; and

g.  such other and further relief as this Court may deem just and proper.

**<u>Demand for Jury Trial</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 1, 2023                      Respectfully submitted,

                                         **BAILEY GLASSER LLP**


                                         _____/s/ Lawrence J. Lederer_____
                                         By: Lawrence J. Lederer (PA Bar No. 50445)
                                         Bart D. Cohen (PA Bar No. 57606)
                                         1622 Locust Street
                                         Philadelphia, PA  19103
                                         (215) 274-9420
                                         llederer@baileyglasser.com
                                         bcohen@baileyglasser.com

                                         John Roddy (*pro hac vice* application forthcoming)
                                         **BAILEY GLASSER LLP**
                                         176 Federal Street, 5th Floor
                                         Boston, MA 02110
                                         (617) 439-6730
                                         jroddy@baileyglasser.com

                                         *Attorneys for Plaintiff and the Proposed Class*